1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE MIDDLE DISTRICT OF ALABAMA

3                    EASTERN DIVISION

4

5   UNITED STATES OF AMERICA

6       vs.                    CASE NO.:  3:10cr14-WKW

7   DIMARCUS SHELLING,

8           Defendant.

9

10

11

12                   * * * * * * * * * *

13                 SENTENCING PROCEEDINGS

14                   * * * * * * * * * *

15           BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

16  DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday, October 6,

17  2010, commencing at 3:50 p.m.

18  APPEARANCES:

19
    FOR THE GOVERNMENT:     Ms. Susan R. Redmond
20                          Assistant United States Attorney
                            OFFICE OF THE UNITED STATES ATTORNEY
21                          131 Clayton Street
                            Montgomery, Alabama  36104
22
    FOR THE DEFENDANT:      Mr. Michael Lee Kidd, Attorney at Law
23                          22 Scott Street
                            Montgomery, Alabama  36104
24
                  Proceedings reported stenographically;
25                   transcript produced by computer.

1        (The following proceedings were heard before the Honorable

2         W. Keith Watkins, United States District Judge, at

3         Montgomery, Alabama, on Wednesday, October 6, 2010,

4         commencing at 3:50 p.m.:)

5            THE COURT:  All right.  Our last sentencing in this

6    case, Number 10cr14, is Mr. Dimarcus Shelling.

7            For the record, again, if the government would identify

8    yourself.

9            MS. REDMOND:  Good afternoon, Your Honor.  Susan

10   Redmond on behalf of the United States.  Seated at counsel table

11   with me is DE -- DEA Agent Tom Halasz.

12           THE COURT:  All right.  And for the defendant?

13           MR. KIDD:  Good afternoon, Your Honor.  Michael Kidd

14   for the defendant Dimarcus Shelling.

15           THE COURT:  Good afternoon, Mr. Kidd.

16           Good afternoon, Mr. Shelling.

17           THE DEFENDANT:  Hi.

18           THE COURT:  How are you doing?

19           THE DEFENDANT:  Doing fine.

20           THE COURT:  Good.  All right.  If you and your counsel

21   would approach the podium, please.

22           I understand that there is an 11(c)(1)(C) plea

23   agreement in this case.  If the government would state the

24   terms, please.

25           MS. REDMOND:  Judge, this is filed in the record as

1   document 106.  The 11(c)(1)(C) agreement between the parties

2   calls for upon -- or in exchange for the defendant's plea of

3   guilty to counts one and two of the indictment, the government's

4   agreement that a two-level reduction in the offense level be

5   given by the Court to the defendant for acceptance of

6   responsibility pursuant to sentencing guideline section

7   3E1.1(a).  The government agrees to move at sentencing for a

8   further reduction of one level pursuant to United States

9   Sentencing Guideline 3E1.1(b) for acceptance of responsibility.

10  The -- should the defendant complete his obligations contained

11  within the cooperation agreement, we agree to move at sentencing

12  for a downward departure pursuant to guideline 5K1.1 and Title

13  18 of the United States Code, Section 3553(e).

14          The defendant, Your Honor, agrees to plead guilty to

15  counts one and two of the indictment, to cooperate with the

16  government as set out in the cooperation agreement contained

17  within the plea agreement, and to waiver of appeal and

18  collateral attack, specifically to include the filing of

19  postconviction proceedings, 2255 petitions.  It allows that the

20  waiver does not include the right to appeal on the ground of

21  ineffective assistance of counsel, prosecutorial misconduct, or

22  if the government should file an appeal of the sentence in this

23  case.

24          I believe those are the salient points of the agreement

25  between the parties.

 1          THE COURT:  Has the defendant complied with the terms

 2  of the plea agreement?

 3          MS. REDMOND:  He has, Your Honor.

 4          THE COURT:  All right.  Mr. Kidd, is that your

 5  understanding of the plea agreement?

 6          MR. KIDD:  Yes, Your Honor, it is.

 7          THE COURT:  Has the government complied with its

 8  provisions?

 9          MR. KIDD:  They have, Your Honor.

10          MS. REDMOND:  Judge, with the exception -- and the

11  government does so now move -- of filing of the third point

12  motion for acceptance of responsibility.  The government asks

13  that the Court grant the two points for acceptance of

14  responsibility and the third point for acceptance of

15  responsibility pursuant to 3E1.1(b).

16          THE COURT:  The Court adopts the recommendation of

17  Probation and grants all three levels reduction for acceptance

18  of responsibility.

19          The Court has considered the plea agreement and

20  considers it reasonable and accepts the plea agreement.

21          Before we get to the objections, there is a motion

22  under 5K for a five-level reduction.  That's pretty

23  significant.  It's filed as document number 188.  What says the

24  government?

25          MS. REDMOND:  Judge, may I have one moment?

1            THE COURT:  You may.

2       (Off-the-record discussion)

3            THE COURT:  The government's proffer in this matter

4    will be sealed.  Go ahead.

5       (This portion of the transcript has been filed under seal

6         pursuant to the Court's oral order)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16        THE COURT:  All right.  I grant the motion for a

17   five-level reduction -- five-level departure under 5K.  The

18   motion is granted.

19        Now, Mr. Kidd have you and your client had an

20   opportunity to review the presentence report in this case?

21        MR. KIDD:  Judge, we have.

22        THE COURT:  Do you have any objections remaining?

23        MR. KIDD:  Judge, we originally had two objections.  We

24   withdrew our first objection after discussing that matter with

25   the government.  The sole remaining objection we have, Your

1    Honor, as you have already well heard on this case, has been the

2    issue of the gun.  When you find it appropriate, Judge, I would

3    like to be a lawyer and bring a couple more things to your

4    attention, understanding your position is pretty clear on this.

5            THE COURT:  All right.  First of all, you want to adopt

6    the arguments of Ms. Smith and other counsel?

7            MR. KIDD:  As my cocounsel very articulately laid out

8    the argument, Judge, I would adopt that same argument.

9            THE COURT:  Okay.  And do you have additional argument?

10           MR. KIDD:  Judge, the only thing I wanted to add

11   additionally, there was some issue -- our sole contention is on

12   the issue of whether the gun was used in the furtherance of the

13   conspiracy and who has the responsibility of proving that beyond

14   preponderance of the evidence.  Under the --

15           THE COURT:  Talking about *U.S. v. Hall*.

16           MR. KIDD:  Under *U.S. v. Hall,* but Judge, under *U.S. v.*

17   *Gallo*.  And it addresses this issue from a different

18   perspective.  And this case was cited in Probation's response to

19   my argument, Your Honor.  And the cite on that is 195 F.3d 1278,

20   an Eleventh Circuit case as well.  But Judge, it addresses this

21   issue under coconspirator conduct under U.S. Sentencing

22   Guidelines 1B1.3(a)(1)(B).  And Judge, what it does there is

23   outline the foreseeability factor and also the gun or the

24   conduct being in furtherance of the conspiracy.

25           Judge, in *Gallo*, it was a gun situation as well.  The

1    Court adopted that argument, actually changed case law with its

2    ruling in *Gallo* and, Judge, said that it was -- as I read it --

3    and I -- as I perceived it, Your Honor, is that the government

4    would have to prove the issue that the gun was used in the

5    furtherance of the conspiracy.

6            Judge, with regard to that issue, it would be our

7    contention that no one present there knew the gun was in play

8    other than Mr. Crowell.  And for the furtherance of the

9    conspiracy, the gun would have to be some type of deterrent to

10   be used to circumvent certain activities or to persuade others

11   to act in a particular way or to influence behavior.  If no one

12   knew the gun was present other than the person who had that gun,

13   it would be impossible for the gun to have some type of an

14   effect on the conspiracy other than the potential that should a

15   situation arise, the gun could be used for Mr. Crowell's own

16   protection.

17           Judge, we would certainly argue that just having the

18   gun for his own protection would not be against the law.  In

19   fact, it's his constitutional right, provided he's not engaged

20   in criminal conduct at the time.  And I understand what we're

21   dealing with here.  But Judge, our argument is that when he was

22   apprehended, he was not at the facility.  He had already left.

23   There's nothing in the file to indicate that the gun had not

24   been in the truck the entire time.  Mr. Crowell went through, as

25   I understand it, at least two different proffers.  No one from

1   the government ever asked him the question, well, you know,

2   where did you have the gun?  Did you have the gun when you were

3   there inside of the building?

4        And Judge, it would just be our contention that there

5   is nothing short of the fact that Mr. Crowell just had the gun

6   present while he was -- during -- or while this drug transaction

7   was taking place that would be shown that it was used in the

8   furtherance of the conspiracy.

9        I think that the *Gallo* case addresses the issue that

10  it's not a strict liability offense, that there are four factors

11  that are to be considered by the Court.  And the second of those

12  factors was that the gun was used in the furtherance of the

13  conspiracy.  And Judge, that's all I'm going to say about that.

14       THE COURT:  All right.  Does the government have any

15  response?

16       MS. REDMOND:  Judge, we adopt our earlier arguments.

17  We would additionally add that the probation office correctly

18  cites to and brings to the Court's attention in the addendum to

19  the PSR the case of *United States v. Pham*, P-H-A-M, and that's

20  463 F.3d 1239.  That is an Eleventh Circuit case issued 2006 as

21  opposed to *Gallo*, which was issued 1999.

22       In the *Pham* case, the Court, citing several cases,

23  found that because numerous cases have recognized guns as tools

24  of the drug trade and because there is a frequent and

25  overpowering connection between the use of firearms and

1   narcotics trafficking, it is reasonably foreseeable that a

2   coconspirator would possess a firearm where the conspiracy

3   involved trafficking and lucrative and illegal drugs.  The Court

4   further, Your Honor, noted that this enhancement had been upheld

5   even when the defendant claimed he was unaware of the firearm.

6           The Court is aware of our sentencing memorandum.  The

7   Court is aware that the defendant -- excuse me -- that

8   Mr. Crowell -- that the evidence that the government would

9   provide, if needed, is that Mr. Crowell was arrested within the

10  gates; he had not left the property; that Mr. Crowell's

11  statement is that he had the gun for his own protection, and

12  that's his own protection while he's engaged in the drug

13  trafficking activity.

14          And the Court is aware that there is case law that says

15  that protection of one's self and one's property, what have you,

16  while engaged in the criminal activity is sufficient nexus to

17  possession of the firearm in furtherance of the drug trafficking

18  activity.

19          I don't believe there are any other issues raised by

20  the defense that the government has not spoken to in this

21  matter.

22          MR. KIDD:  And Judge, if I may respond to the *Pham*

23  case.

24          THE COURT:  Go ahead.

25          MR. KIDD:  Your Honor, in the *Pham* case there's a huge

1   distinction in that in the *Pham* case, the codefendant that

2   actually had the gun had admitted to other codefendants that he

3   owned multiple guns, that in fact multiple guns had been stolen

4   from his residence, and he had also been recorded in a wiretap

5   talking about using guns to settle disputes in drug activity.

6   And that is what the Court leaned upon in finding that those

7   guns were used in the furtherance of the conspiracy.

8          And we would argue, Your Honor, that in this particular

9   case, short of Mr. Crowell just being present with the gun, that

10  would be the only thing that the government could offer to show

11  in furtherance of the conspiracy.

12         And Judge, we certainly respect the Court's findings

13  and have heard those now twice.  But Judge, as I said, when no

14  other individual knows the gun is in play, it would be

15  impossible for the gun being present to have some type of

16  influence in conduct on others there.  And we would certainly

17  argue when you talk about the furtherance of the conspiracy,

18  that the gun being present in the conspiracy affects others and

19  how they act, behave, and what they do.

20         MS. REDMOND:  And the only thing we would add is

21  there's nothing that requires that the gun impact other members

22  of the conspiracy or require that -- or aid in convincing others

23  engaged in the conspiracy to act or not act.  It is significant

24  and sufficient that the firearm was used for Mr. Crowell's

25  protection while he was engaged in the criminal activity; i.e.,

1  a deterrent should someone take improper or, as he finds it to

2  be, improper action against him as he's engaged in the

3  trafficking activity.

4       THE COURT:  Okay.  Well, we have some new arguments as

5  to this defendant and yet another case or two added to the

6  equation.

7       I'll reiterate my prior findings that Mr. Crowell was

8  involved in both legal and illegal business activities at this

9  location.  He carried the gun for his protection during legal

10 and illegal activities.  He is a coconspirator; therefore, his

11 carrying the gun is attributable to other coconspirators if it's

12 used in the furtherance of the activity.  And I find that it's

13 not clearly improbable under *Hall*, if that in fact is still the

14 standard, from 1995 -- that it's not clearly improbable under

15 *Hall* that the guns were not used in the furtherance of the

16 conspiracy.  I may be getting my double negatives tripled

17 there.  I'm not sure I said that correctly right.  That's not

18 right either.  At any rate, I don't find under *Hall* that the

19 defendant has carried his evidentiary burden of demonstrating

20 that it's clearly improbable that the guns were used in

21 furtherance the conspiracy.

22      I also find that it was reasonably foreseeable.

23 Anytime you're dealing with 1100 pounds of an illegal drug and

24 you've done it three or four times, you're doing clandestine

25 operations behind chained, closed gates, that there's a frequent

1    and overpowering connection between the use of firearms and

2    narcotics trafficking.  And our circuit has recognized that for

3    years and years.  And I find that it is reasonably foreseeable

4    for this defendant and the other defendants as coconspirators to

5    think that somebody in that crowd of folks who all didn't know

6    each other necessarily that well, I would assume -- there's no

7    evidence they did -- that somebody wasn't toting heat or had it

8    available to them.

9         So I overrule the objection and find that the two-level

10   enhancement for possession of an illegal weapon -- or possession

11   of a weapon which was legal, actually, except that it was being

12   used in illegal activity -- I find that that enhancement does

13   apply and the objection is overruled.

14        Any other objections, Mr. Kidd?

15        MR. KIDD:  No, Your Honor.  That was all.

16        THE COURT:  Having dealt with all the motions -- having

17   dealt with all the motions and in compliance with Justice

18   Breyer's majority opinion in *Booker,* this Court, while not bound

19   to apply the guidelines, has consulted them and has taken them

20   into account on the issue of the appropriate range of sentence

21   to be imposed in this case.

22        Having ruled upon the objections to the presentence

23   report, the Court adopts the factual statements contained in the

24   presentence report with specific findings prior to the granting

25   of the 5K motion that the offense level is 31, the criminal

1    history category is III, the guideline range is from 135 to 168

2    months, the supervised release period is not less than four

3    years, and the fine range is from 15,000 to $4 million.

4         Now, Mr. Shelling, I have granted a five-level

5    reduction.  You weren't in here when I talked to the last

6    defendant, but you're in a range of substantial assistance that

7    I don't see very often, five levels.  That's -- that's huge for

8    the government to file such a motion.  That is giving you

9    substantial credit here against your sentence.  Having granted

10   that motion, I find that the offense level is 25, the criminal

11   history category is III --

12        MS. REDMOND:  Judge, my apologies.  I believe that

13   might be 26.

14        THE COURT:  I believe you're right.  There are three

15   kinds of people in the world, those who can count and those who

16   can't.

17        MS. REDMOND:  I already had it calculated.  That's the

18   only reason.

19        THE COURT:  All right.  So it would be 26.  I did

20   miscalculate that.  Criminal history category is III.  The

21   guideline range is from 78 to 97 months.  The supervised release

22   period continues to be not less than four years.

23        And does the fine range change?

24        PROBATION OFFICER FRANK:  Yes, Your Honor.  It becomes

25   12,500 to $4 million.

1        THE COURT:  And the fine range is 12,500 to $4 million.

2        Does the defendant dispute these calculations?

3        MR. KIDD:  No, Your Honor, we do not.

4        THE COURT:  Does the government dispute the

5   calculations?

6        MS. REDMOND:  No, Your Honor.

7        THE COURT:  All right.  Mr. Kidd, do either you or your

8   client have anything to say in mitigation or otherwise before

9   the Court pronounces sentence in this case?  And if you

10  wanted -- you had someone you had step out.  I don't know if you

11  want them back or not.

12        MS. REDMOND:  I apologize.  I'll get her.

13     (Brief pause)

14        MR. KIDD:  Judge, we'll proceed without her.  That's

15  okay.  Thank you.

16        THE COURT:  All right.

17        MR. KIDD:  Your Honor, my client's criminal history

18  speaks for itself.  I saw a shirt the other day that a kid was

19  wearing in the mall, and it said, It's Just Marijuana.  And Your

20  Honor, this is a classic situation about why it's not just

21  marijuana.  Your Honor, Mr. Shelling became a marijuana addict

22  at the age of 15.  He's 30 years old.  Half of his life he's

23  lived as being an addict.

24        THE COURT:  I believe you said all day, every day.

25        MR. KIDD:  Yes, sir.  Your Honor, his entire adult

1  life, his entire teenage years, the time that he has to form

2  decisions, decision-making processes, has all been corrupted by

3  his willful use of marijuana.

4       Everything in his criminal history, everything -- as a

5  prosecutor for over ten years myself, everything in his criminal

6  history is indicative of what you would expect to see of someone

7  who uses marijuana on a daily basis.  Your Honor, he's never had

8  anything that has been what I would consider a very violent type

9  person.  There's been domestic violence issues, which I would

10 attribute directly to that environment, whether he was under the

11 influence or under the influence of the lifestyle that

12 accompanies the use.

13      Your Honor, he's never been in a situation where I

14 would argue that he's been grounded by his conduct.  I believe

15 Probation was correct in saying that in a lot of cases he has

16 skated around situations where no one got his attention.  But in

17 saying that, Your Honor, I have been dealing with Mr. Shelling

18 since February of this year.  I have spent a number of hours

19 with him talking to him about the crime as well as things that

20 were going on in his life.

21     (This portion of the transcript has been filed under seal

22      pursuant to the Court's oral order)

23

24

25

1

2

3

4          And in the face of that, since the time of his arrest,

5     Your Honor, he's done everything that he can possibly do to try

6     to establish a foundation to right the ship.  Your Honor, under

7     his criminal history and the amount of marijuana that was

8     involved, I would have to agree that the upper part of the

9     guidelines would probably be appropriate.  I would be lying to

10    you if I argued otherwise.

11         But Your Honor, I would ask you to consider the gun

12    enhancement and the fact that it does give him a two-point bump

13    and that although it may have been reasonably foreseeable to

14    him, there's nothing in Mr. Shelling's conduct criminal in the

15    past that would indicate that he associates himself with guns or

16    gun usage.  And Your Honor, we would ask that you would consider

17    the fact that he is getting a substantial increase because of

18    the gun being present.

19         And we would just ask, Your Honor, that you would

20    consider the low end of the guidelines, order him to a facility

21    where he can get meaningful drug treatment and, Your Honor, put

22    the ball in his court for the first time, having a hard, cold

23    look in the mirror as being a young man who's 30 years old

24    that's lived half his life with an addiction in the face of a

25    large period of time of incarceration for the very first time in

1   his life and impressing upon him, Judge, it's now or never.

2   Either he's going to take the steps to right the ship and become

3   a productive member of society or he's going to be hopelessly

4   lost.

5           And Judge, I certainly think from counseling with

6   Mr. Shelling that he's got every motivation with family members

7   on the outside to want to right the ship.  And Judge, I think he

8   wants an opportunity to prove himself, that he is worthy of

9   another chance.

10          Mr. Shelling, is there anything you would like to add?

11          THE DEFENDANT:  Well, I just know I made a big

12  mistake.  And I just ask that you just give me the low end.  I'm

13  going to try to be a better man when I get out, be a better

14  father and a better husband.  I just want to do the right

15  thing.  I just ask for you to help me get the low end so I can

16  get back to my family and do the right thing.

17          THE COURT:  Okay.  Go ahead.  Government?

18          MS. REDMOND:  Judge, I would just -- excuse me -- note

19  for the record in looking over the defendant's criminal

20  history -- and I hate to say it as a former state prosecutor,

21  but it's what we see all the time.  You know, you get a slap on

22  the hands.  You get ten days here, you get 12 months, but then

23  you get it suspended.  You get placed on probation.  You show up

24  sometimes; you don't show up other times.  They revoke you.

25  You're in there for five days until they put you back out on

1   probation or supervised release.  It's a revolving door, and

2   that revolving door only makes for a bigger and better

3   criminal.  And that's in fact what I think we see in

4   Mr. Shelling's case.

5        While it might have started out that he was a simple,

6   for lack of a better, drug user -- and that being marijuana,

7   because there's nothing that I see that indicates that there's

8   anything much more than that -- he has graduated through all of

9   these -- you know, from 19 to 24 to 25, into this larger

10  conspiracy.

11       In my sentencing memorandum, I think we set out where

12  we believe Mr. Shelling's place in this entire conspiracy is.  I

13  think that with the guideline range that the Court has before

14  it, understanding that it's advisory, there is within that

15  guideline range sufficient time not only for Mr. Shelling to

16  truly get his act together in terms of his drug abuse, but to

17  really make an effort to receive training to change his life so

18  that when he comes out, he really can be a father to his

19  children and show the Court -- other than just giving us the

20  words, show the Court that he's actually made a difference.

21       I don't believe that a sentence at the high end of the

22  guideline is appropriate, but I leave it to the Court as to what

23  an appropriate sentence is in this case.

24       THE COURT:  Mr. Shelling, the sentence will now be

25  stated, but you'll have a final chance to make legal objections

1  before the sentence is imposed.

2        I note your age, 30, and that's distressing to me.  I

3  hate to see somebody your age -- I have a son your age.  I have

4  a law clerk your age.  I hate to see people ruin their lives.

5  And there's nobody in this room who wants to see you fail.

6  Everybody in this room wants to see you succeed, but you're kind

7  of dragging an anchor right now.

8        And the first thing I'm going to do is call on you to

9  be a man, because you're a father, and I believe that fathers

10  should be men, not boys.  I think you should grow up.  And so

11  often I see young men who get in trouble who are really just

12  still boys.  They just never grew up.  And now you've got

13  children, and there are consequences that go with keeping the

14  kind of company you have to keep to smoke dope every day.  It's

15  not like being at choir practice or at a Boy Scout meeting or

16  coaching your daughter's softball team or soccer team, which I

17  hope you'll get out and be able to do.

18        You put yourself and your family in danger.  You wind

19  up in court.  You get tagged with a gun that somebody else had

20  that you didn't know they had.  You're looking at a lot of time.

21        Now, you've got a pretty significant criminal history

22  for somebody who's 30.  I've seen worse.  But it starts with the

23  little things, those little traffic violations, the running the

24  stop signs, the not wearing your seat belt, the letting minors

25  drive your car, the DUIs, the little fender-benders that you

1   might run away from.  Those things turn into big things because

2   you do one, you do two, you do three; it gets easier to do

3   number four, number five, and six down the road.

4          So basically, I'm calling on you to grow up and be a

5   man now that you're 30 and now that you're in real trouble.  Do

6   you know what their sentencing recommendation is?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  It's 168 months.  But for your assistance

9   in this case, you would have gotten that or more.  That's -- you

10  started doing the right thing.  That's good.

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  In order to break any kind of a habit that

13  you have, you're going to have to be intentional about it.

14  You're going to have to intentionally avoid situations in prison

15  and out -- I hope not in prison, but certainly when you get

16  out -- where drugs are present.  You're going to have to make

17  new friends, new associates, a new way of thinking about life

18  where you think more about your girls than you do about

19  yourself.  Because that's the way you're supposed to think.  Do

20  you agree?  That's the way a parent is supposed to think.

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Okay.  Well, I'm calling on you to do

23  that.  That's part of growing up, part of being a man and taking

24  responsibility for being a man.  As I told the guy before you,

25  sometimes you suffer for doing the right thing.  And you've done

1    the right thing in this case, and you're suffering for it.

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  But you always suffer for doing the wrong

4    thing.  So if you've got a choice, suffer for doing the right

5    thing, not the wrong thing.  It's foolish to suffer for doing

6    the wrong thing.

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Because other people suffer with you, like

9    your little girls and family and so forth.

10             Having considered the sentencing guidelines and

11   evaluated the reasonableness of a sentence through the lens of

12   Section 3553, it is the judgment of the Court that you are

13   hereby committed to the custody of the Federal Bureau of Prisons

14   to be imprisoned for a total term of 84 months.  That's exactly

15   half of what Probation -- if my arithmetic is correct, which it

16   may not be, but I believe it's exactly half.  That's in each

17   count to be served concurrently.  It's a guideline sentence.

18             Having considered the guideline computations and taken

19   them under advisement, the Court finds that the sentence imposed

20   is sufficient but not greater than necessary to comply with the

21   statutory purposes of sentencing.  Furthermore, it is reasonable

22   when I consider the nature and circumstances of the offense,

23   2351 keys of marijuana, several occasions.

24             But I've also considered your history and

25   characteristics.  I've crafted the sentence to reflect the

1   seriousness of the offense, because it's not just marijuana.

2   Marijuana is getting you in this trouble.  You started at 15

3   because that's the culture.  I know that it is.  I know what the

4   T-shirt says, but I know what the law is too.  And that's why

5   you're in this trouble.  And you're going to serve a lot of time

6   for the weed.  That's what this boils down to.

7          I also have crafted the sentence to promote respect for

8   the law and to provide just punishment and, in this particular

9   case, to provide you with needed educational or vocational

10  training, medical care, or other correctional treatment.  I see

11  that you have a very poor work history.  I'm going to require

12  that you get some vocational training and when you get out, get

13  a good job doing honest work paying honest taxes.  And finally,

14  I have imposed a sentence to avoid unwarranted sentencing

15  disparities among other defendants who are charged with the same

16  thing or similar to you and who have similar criminal

17  backgrounds.  I'm going to recommend that you be designated to a

18  facility where intensive drug treatment is available and also to

19  a facility where vocational and educational training are

20  available.

21         Upon release from imprisonment, you shall be placed on

22  supervised release for a period of five years on count one and

23  five years on count two, to run concurrently.  Within 72 hours

24  of release from custody, you shall report to the probation

25  office in the district to which you are released.  While on

1  supervised release, you shall comply with the mandatory and

2  standard conditions of supervised release on file with the

3  Court.

4          I'm going to order the following special conditions.

5  You shall participate in a program of drug testing -- you will

6  be drug tested when you get out -- administered by the probation

7  office for substance abuse which may include -- will include

8  testing to determine whether you have reverted to the use of

9  drugs.  You shall contribute to the cost of any treatment based

10 on ability to pay and the availability of third-party payments.

11         While on supervised release, you will submit to a

12 search of your person, residence, office, and vehicle pursuant

13 to the search policy of this Court.  Based on your inability to

14 pay, I'm not imposing a fine nor restitution, because I find no

15 identifiable victim who incurred a financial loss.  However, you

16 are ordered to pay to the United States District Court Clerk a

17 special assessment fee of $200, which is due immediately.

18         Now, are there any objections to the sentence or to the

19 manner in which the Court pronounced it?  For the --

20         MR. KIDD:  No -- I'm sorry.

21         THE COURT:  First from the government.

22         MS. REDMOND:  No, Your Honor.  The government would

23 only ask that when the defendant is placed on supervised

24 release, that Probation consider adding as a component an

25 assessment to determine whether or not family counseling and/or

 1   some child care course might be appropriate in Mr. Shelling's

 2   case.

 3          THE COURT:  I would urge mental health and family

 4   counseling during his period of supervised release to give him

 5   the best chance of reentry without further criminal activity.

 6   Okay?

 7          PROBATION OFFICER FRANK:  Yes, Your Honor.

 8          THE COURT:  All right.  Any objections from the

 9   defendant?

10          MR. KIDD:  No, Your Honor.

11          THE COURT:  All right.  The sentence is ordered imposed

12   as stated.

13          Mr. Shelling, pursuant to the plea agreement, you've

14   waived most of your appeal rights, but you have retained the

15   right to appeal within 14 days under certain very limited

16   circumstances that are set out in the plea agreement.  If you

17   cannot afford the cost of an appeal, you have the right to apply

18   for leave to appeal *in forma pauperis*.  In other words, you may

19   apply to proceed with your appeal at no cost to you.

20          Anything further from the government?

21          MS. REDMOND:  No, Your Honor.

22          THE COURT:  Anything further from the defendant?

23          MR. KIDD:  No, Your Honor.

24          THE COURT:  All right.  Mr. Shelling, I was sincere

25   when I said everybody in this room wants to see you succeed, but

1    you've got a tough row to hoe between now and getting out.   And

2    I wish the best for you.   Okay?   Don't want to see you back.

3    All right.   You're remanded to the custody of the United States

4    Marshal.

5            And we are adjourned.

6        (Proceedings concluded at 4:29 p.m.)

7                        * * * * * * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2          I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.

4          This 13th day of January, 2011.

5

6                                    /s/ Risa L. Entrekin
                                     Registered Diplomate Reporter
7                                    Certified Realtime Reporter
                                     Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25